1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3    JORGE FRANCISCO SANCHEZ,
4    et al.,

5         Plaintiffs,                    Civil No. 08-2151 (JAF)

6         v.

7    ESSO STANDARD OIL DE PUERTO
8    RICO, INC.,

9         Defendant.


10    **PRELIMINARY INJUNCTION FINDINGS**
11    **AND CONCLUSIONS**
12
13                      **I.**

14        This is a civil action filed pursuant to the Solid Waste

15    Disposal Act, as amended, 42 U.S.C. § 6972, seeking the imposition of

16    civil penalties and the granting of injunctive relief. Notice

17    requirements have been met under 42 U.S.C. § 6972. The amending

18    dispositions to the Solid Waste Disposal Act by the Resource

19    Conservation and Recovery Act (RCRA), 42 U.S.C. § 6991e, are also

20    invoked.  Jurisdiction is present under 28 U.S.C. §§ 1331 and 1337.

21        Plaintiffs Jorge Francisco Sánchez and a family-held corporation

22    own a parcel of land with a gasoline-dispensing service station

23    located in a populated area, Road No. 3, Km. 14, Canóvanas, Puerto

24    Rico. The gasoline station has been in operation since the early

25    1960s. Originally, Shell Company operated the station. Esso Standard

26    Oil Company (Puerto Rico) admits that they took over the service

27    station in or around the year 1982.  It is clear from the record that

28    from 1982 to approximately 1988, gasoline dispensed in Puerto Rico

Civil No. 08-2151 (JAF)                                           -2-

1    was leaded gasoline. The currently-used unleaded gasoline product

2    became available in the years 1988 to 1989.

3        Since 1982, Defendant Esso has operated the Dolores Service

4    Station and has installed and owned the service station's underground

5    storage tanks, related pumps and pipelines, and the servicing

6    equipment for the storage and dispensing of gasoline, diesel, and new

7    and used oils. The underground tanks were originally steel tanks, and

8    the evidence received at the preliminary injunction hearing confirms

9    that the service station facility and equipment discharged hazardous

10   petroleum-related products and discarded hazardous waste and related

11   contaminants into the soils and groundwater below the Dolores Service

12   Station. The record sustains the finding that at least since 1993,

13   Defendant Esso knew of this condition.

14       Hazardous waste and hazardous constituents or substances related

15   to petroleum-based gasoline, diesel fuel, and used oils have left

16   concentrations beyond allowable limits at the site's soils and

17   groundwater. The presence of these contaminants causes damages to

18   Plaintiffs' property, and creates a substantial health hazard to

19   navigable waters of the United States, including the adjoining Río

20   Grande de Loíza.

21                                **II.**

22       Contaminated sites are a national problem in the United States,

23   including the island of Puerto Rico. As a response to precisely those

24   evils, Congress adopted a comprehensive federal regulatory program

25   for the safe management of underground storage tanks as part of the

26   RCRA.  This regulatory program is managed in Puerto Rico by the local

Civil No. 08-2151 (JAF)                                                    -3-

1    Environmental Quality Board (EQB).  The EQB is the agency responsible
2    for the implementation of the federally-sponsored Underground Storage
3    Tank Program (USTP).  Actually, the November 7, 1990 current Puerto
4    Rico Underground Storage Tank Control Regulation (USTCR) was enacted
5    by the EQB following the letter and spirit of the federal regulation
6    that appears published in 40 C.F.R. Part 280. Its purpose is to
7    ensure the protection of Puerto Rico's surface and groundwater
8    resources. The regulation also protects the public health, the safety
9    of underground tank systems, and the overall environment.

10        To coordinate the federal/state efforts of protecting the public
11   health and the environment, in March 1997 the government of Puerto
12   Rico and the U.S. Environmental Protection Agency (EPA) entered into
13   a Memorandum of Agreement setting forth the roles, policies,
14   responsibilities, and procedures for the sound management of the
15   program by the EPA Region II and the EQB with respect to the USTP for
16   the Commonwealth of Puerto Rico. This was done pursuant to section
17   9004 of RCRA, 42 U.S.C. § 6991c, as amended. This working agreement
18   establishes the manner in which the government of Puerto Rico and the
19   EPA will coordinate the implementation and administration of the
20   USTCR. The government of Puerto Rico, through the EQB, assumed
21   primary responsibility for the implementation of the RCRA Underground
22   Storage Tank Program within the territorial boundaries of Puerto
23   Rico.  The EPA retained the authority to make certain that the law
24   and regulation would be followed, including direct federal
25   implementation in the event that Puerto Rico was unable or failed to
26   act.

Civil No. 08-2151 (JAF)                                          -4-

**III.**

Esso discontinued its contractual interest in the Dolores Service Station in October 2008, and Plaintiffs have requested Esso to remove the contamination released from their underground storage tanks and its related pipelines and service equipment from their property. During the hearing held December 2-3, 2008, the court was able to ascertain basic facts that warrant preliminary injunctive relief.

We will first make findings related to underground gasoline tank history.

Esso's relationship with Plaintiffs started in 1982. Until 1988, leaded gasoline was dispensed throughout Puerto Rico.  The unleaded product became available in late 1988 or early 1989. Therefore, it is reasonable to assume that the Dolores Service Station sold Esso leaded gasoline up to late 1988.

The gasoline tanks existing in 1982 appear to be the same steel tanks that held leaded gasoline until they were changed for fiberglass tanks in January 1998.  There is a documented use of such tanks as of 1985. See Defendant's Exhibit "7", supplemented with a complete copy of the document and attachment through Plaintiffs' Exhibit "7". The same tanks that were documented to exist in 1985 are the ones changed for fiberglass tanks in 1998. Therefore, the contamination of the site predates the 1998 tank change. As already mentioned, such contamination appears documented as far back as April 1993. See Plaintiffs' Exhibit 1.

Civil No. 08-2151 (JAF)                                              -5-

1          After the tank substitution that took place in January 1998, and

2     since there existed documented contamination since at least 1993,

3     Esso proceeded to perform a subsoils evaluation of the facility in

4     November 2001, through Environmental Resource Technologies (ERTEC).

5     ERTEC is the sole environmental contractor used by Esso in Puerto

6     Rico since the year 2001.

7          The subsoils evaluation results were provided to Esso in

8     February 2003, fifteen months after conducting the sampling. The

9     subsoils evaluation results revealed the presence of Total Petroleum

10    Hydrocarbon (TPH) in the diesel range. TPH was found in

11    concentrations of 3,290 mg/kg in the soils above the groundwater

12    surrounding the diesel underground storage tank. The concentration

13    found was above the acceptable 100 mg/kg level set by the EQB. The

14    subsoils evaluation report recommended that the facility's diesel

15    underground tank and pipeline be tested as required by EQB UST Rule

16    503(A). The tank and pipelines were not tested.

17         In September 2006, Esso once again contracted the services of

18    ERTEC to perform an environmental evaluation of the facility to

19    determine the presence of petroleum hydrocarbons in the soils and the

20    groundwater. On November 14, 2006, ERTEC presented Esso with a Phase

21    II Environmental Evaluation of the service station facility. The

22    Phase II Environmental Evaluation revealed that the groundwater below

23    the Esso Dolores Service Station is contaminated with the gasoline

24    constituent Benzene. By reason of the Safe Drinking Water Act, 33

25    U.S.C. §§ 455 *et seq.*, Benzene is a hazardous substance regulated by

26    the EPA.  The Maximum Contaminant Level (MCL) of dissolved Benzene in

Civil No. 08-2151 (JAF)                                           -6-

1    groundwater established by EPA is 5 micrograms per liter of water

2    (5 mg/l). For drinking water, it is 0.5 mg/l. Benzene is a known

3    carcinogen. Water samples obtained in 2006 underneath the Esso

4    Dolores Service Station revealed dissolved concentrations of Benzene

5    as high as 2,800 mg/l.

6         The 2006 Phase II Environmental Evaluation concluded that the

7    facility's Benzene groundwater contamination is "apparently related"

8    to releases from the facility's Southeast area, where the gasoline

9    underground tanks are located, and from the Northeast area, where

10   grease traps are found. The evaluation also reported that the

11   facility's soils are contaminated with gasoline, diesel, and oil.

12        A review of the EQB Quality Division UST Program File number UT-

13   02-86-1255 confirms that Esso never informed the EQB of the soil and

14   water contamination discovered in September 2006. The Dolores Service

15   Station site is not listed in the Leaking Underground Storage Tank

16   facility list (LUST) of the EQB, as required by the EPA, probably as

17   a result of non-reporting.

18        As of today, Esso has minimized the gravity of the contamination

19   and has not performed the necessary tests to properly investigate the

20   amount of hazardous product that has leaked out since 1982 or the

21   vertical or horizontal extent of the leakage. No organic lead

22   analysis has ever been made.

23        As of today, Esso has distanced itself from its duty to confront

24   the contaminated status of the property and has only taken bland

25   mitigation measures, without committing itself to removing the

26   contamination as required.

Civil No. 08-2151 (JAF)                                                    -7-

1      Esso's apparent violations of its duties as lessee and operator
2   of the Dolores Service Station borders on egregious conduct. Esso has
3   been derelict by not fully reporting to EQB the suspicion of spills
4   as required by the USTCR. It has not taken meaningful cleaning steps
5   or carried out any meaningful aggressive form of mitigation.
6   Mitigation efforts have been minimal and conservative to say the
7   least. The mitigation efforts do not take into account the serious
8   documented picture of contamination and appear directed at gaining
9   time, in order to hopefully duck legal responsibility or have others,
10  such as the Plaintiffs or another incoming petroleum company, deal
11  with the problem generated by Esso's actions.

12                                    **IV.**

13      Expert testimony by Plaintiffs surprisingly tends to indicate
14  that Esso has taken advantage of the EQB's long-standing history of
15  non-intervention and laissez-faire to the corporation's advantage.
16  The limited record developed at the hearing clearly shows Esso in
17  command, directing the course of its environmental business without
18  question by the local EQB.

19      Evidence of this appears to be on this record based on an
20  undisputed series of violations to EQB's USTR and its federal
21  counterpart in 40 C.F.R., Pt. 280. See Plaintiffs' Exhibit 1: Listed
22  Violations in Exh. 1 to Rules 501, 503, 601, 602, 604, and 606.

23      In sum, a review of the undisputed paper record as it stands
24  today reveals that Esso appears to be in continuous violations to the
25  mentioned rules and the 40 C.F.R. counterparts, Part 280,
26  Secs. 280.50, 280.52, 280.60, 280.61, 280.62, 280.63, and 280.65.

Civil No. 08-2151 (JAF)                                                    -8-

1    These include, among others, failure to report, investigate or clean

2    up spills from underground gasoline storage tanks; failure to take

3    immediate action to prevent additional spills or to identify and

4    mitigate; failure to undertake initial characterizations of the

5    affected properties and quality of waters; failure to remove the

6    spilled product; failure to consider and sweeping under the rug

7    potential lead contamination accruing from 1982 to 1988; failure to

8    notify closing or modification of operations, and failure to consider

9    the possible contamination of the navigable waters of the Río Grande

10   de Loíza.

11                                   **V.**

12       There being no doubt that there is a logical possibility of lead

13   contamination at the site, we find that Esso failed to address that

14   aspect of the site contamination at the time it changed tanks at

15   Dolores Service Station in the year 1998. The record reflects that

16   Esso excavation and contaminated soil disposition during the tank

17   change did not consider lead as a contaminant. Soils were disposed of

18   at an industrial waste site in Puerto Rico labeled as contaminated

19   only with <u>unleaded</u> gasoline products.  Obviously, lead contamination

20   was an issue, and the willful blindness patent here is indicative of

21   potential violations to the Solid Waste Disposal Act.

22                                   **VI.**

23       This court has made these findings on the basis of the

24   undisputed evidence presented during the two-day hearing. We are of

25   the opinion that the Plaintiffs confront obvious irreparable harm

26   that imposes upon their property the gravamen of a contaminated site,

Civil No. 08-2151 (JAF)                                            -9-

1    limiting Plaintiffs' property right and future use of the facility.

2    The costs associated with pre-cleanup studies and actual cleanup can

3    reach   astronomical   monetary   figures,   and   Esso   must   bear

4    responsibility as required by law.

5         We find that there is no need to make a boilerplate exposition

6    of irreparable harm and injunction law, because it is patently clear

7    that this case fits the most restrictive measure for that remedy.

8         Therefore, the court **ORDERS** as follows:

9         1.   **On or before December 18, 2008,** both parties will submit

10   recommendations as to names of companies and/or entities that can

11   perform a comprehensive site assessment before the court further

12   orders Esso to remediate soil and groundwater contamination at the

13   site originating from leaded gasoline, unleaded gasoline, and related

14   petroleum-based products dispensed at the Esso Dolores Service

15   Station during the period 1982 to October 31, 2008.

16        2.   A hearing to consider the implementation of a comprehensive

17   site assessment, at Esso's expense, will be held **on December 22,**

18   **2008, at 9:30 A.M.** On said occasion, the parties are expected to

19   offer testimony from potential participant companies which may be

20   interested in and are capable of performing the assessment study

21   contemplated here.

22        3.   Not knowing whether ERTEC has the capability of competing

23   for a court-authorized comprehensive site assessment, the court

24   notifies the parties that ERTEC's close and exclusive working

Civil No. 08-2151 (JAF)                                              -10-

1    arrangements with Esso may disqualify that company from participating

2    in the study.

3         4.   The parties will jointly notify the EQB and the EPA of the

4    issuance of this order, with proof of notice on record **within**

5    **seventy-two (72) hours of issuance.**

6         5.   In addition, and subject to the results of the scheduled

7    December 22, 2008 hearing, Esso is not only enjoined and restrained

8    from contributing by action or inaction to further environmental

9    contamination at the site, but Esso will be ordered, depending on the

10   results of the Comprehensive Site Assessment, to pay for all

11   necessary testing, corrective actions, and removal of all pollution

12   and contamination within the site and into adjacent areas as

13   previously described.

14        **IT IS SO ORDERED.**

15        San Juan, Puerto Rico, this 5th day of December, 2008.

16                              S/José Antonio Fusté
17                              JOSE ANTONIO FUSTE
18                              Chief U. S. District Judge