UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

JORGE FRANCISCO-SÁNCHEZ and
DOLORES SERVICE STATION AND
AUTO PARTS, INC.,

    Plaintiffs,

    v.

ESSO STANDARD OIL DE PUERTO
RICO, INC.,

    Defendant.

Civil No. 08-2151 (JAF)

**OPINION AND ORDER**

Plaintiffs, Jorge Francisco-Sánchez and Dolores Service Station and Auto Parts, Inc., bring this action against Defendant, Esso Standard Oil de Puerto Rico, Inc. (Docket No. 1.) Plaintiffs allege violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k. (Id.) Defendant asserts counterclaims for reimbursement under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), and for indemnification under Puerto Rico law. (Docket No. 222.) Plaintiffs move to dismiss Defendant's counterclaims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and under federal preemption and abstention doctrines. (Docket No. 229.) Defendant opposes (Docket No. 233), and Plaintiffs reply (Docket No. 241). Defendant files a cross-motion to dismiss under Rule 12(b)(1) (Docket No. 236), which Plaintiffs oppose (Docket No. 239), and Defendant replies to this opposition (Docket No. 247).

# I.

## **Factual and Procedural Synopsis**

We draw the facts below from Plaintiffs' complaint (Docket No. 1) and Defendant's averments in support of its counterclaims (Docket No. 222). For the limited purpose of addressing a motion to dismiss, we take a complainant's factual allegations as true and draw all reasonable inferences in his favor. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

Since 1984, Defendant has owned and operated Dolores Service Station (the "station") in Canóvanas, Puerto Rico, and underground storage tanks ("USTs"), pipelines, and servicing equipment at the station. Defendant has also supplied and transported petroleum fuel products to the station. Plaintiffs have commercial stores and own real property located at the station.

Over the course of the station's operation, at undetermined periods of time, the USTs and other station components released hazardous substances, including petroleum products, spent oil, and hydraulic fluid. The concentrations of these substances are in excess of natural levels in uncontaminated soil, and these substances have entered the soil and groundwater under the station. At some time in or after November 2001, Defendant's consultant conducted a subsoil evaluation to assess the conditions near the USTs and discovered the presence of Total Petroleum Hydrocarbon ("TPH") in the diesel range in the soil above the water table, at levels well in excess of the standard set by the Puerto Rico Environmental Quality Board ("EQB"). Defendant learned of these results in February 2003. At some time in or after September 2006, Defendant's consultant performed another site evaluation to test for the presence of petroleum products in the soil and groundwater at the station. This evaluation revealed the contamination of the groundwater beneath the station

with benzene, a carcinogenic chemical that poses grave risk to public water supplies. Defendant's consultant concluded that the benzene contamination is apparently related to Defendant's USTs at the station, and reported this finding to Defendant in November 2006. Defendant never informed the EQB about its discoveries resulting from the 2006 evaluation, and has failed to fully investigate the integrity of the USTs and the full extent of the leakage. Defendant has taken no steps to contain and remove the contaminants.

Plaintiffs have also exercised control over the premises and its constitutive components. Defendant has concluded agreements with Plaintiffs for the latter to assume the risk and exclusive responsibility for, hold Defendant harmless for, and protect Defendant from all injuries and damage incurred by the premises encompassing the station, including environmental harm. During the pendency of this case, Defendant has incurred expenses to address the release or disposal of hazardous wastes that are unrelated to UST fuel operations at the station.

On October 17, 2008, Plaintiffs commenced the instant case in federal court, alleging violations of the EQB's UST standards, and illegal operation of the station as a waste disposal facility. (Docket No. 1.) Plaintiffs seek civil penalties, an injunction ordering Defendant to undertake remedial actions, and an injunction against further release of hazardous material. (Id.) On September 30, 2009, Defendant filed an amended answer with counterclaims against Plaintiffs and other parties, seeking indemnification under contract and reimbursement under CERCLA for the cost of remedial actions that are unrelated to the USTs. (Docket No. 222.)

Plaintiffs moved to dismiss Defendant's counterclaims on November 5, 2009 (Docket No. 229); Defendant opposed on November 20 (Docket No. 233); and Plaintiffs replied on

December 22 (Docket No. 241). Meanwhile, Defendant moved to dismiss Plaintiffs' complaint on December 12 (Docket No. 236); Plaintiffs opposed on December 19 (Docket No. 239); and Defendant replied on January 7, 2010 (Docket No. 247).

## II.

## Standards for Dismissal

**A.    Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a movant may challenge the court's subject-matter jurisdiction in either of two ways: First, a movant may raise a factual challenge by controverting the plaintiff's jurisdictional allegations when they are distinct from the case's merits. Valentín v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). The court then addresses "the jurisdictional claim by resolving the [predicate] factual disputes." Id. Second, under a sufficiency challenge, the court takes the plaintiff's "jurisdictionally-significant facts as true" and "assess[es] whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id. The party asserting jurisdiction bears the burden of showing its existence. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003).

**B.    Rule 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss an action against him, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing this motion, we "accept[] all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar Found.,

993 F.2d 962, 971 (1st Cir. 1993).  However, mere legal conclusions "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

The complaint must demonstrate "a plausible entitlement to relief" by alleging facts that directly or inferentially support each material element of some legal claim. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 559) (internal quotation marks omitted).

## III.

## Analysis

**A.     Plaintiffs' Motion to Dismiss**

Plaintiffs contend that we should dismiss Defendant's counterclaims against them because of (1) our lack of subject-matter jurisdiction over Defendant's claim under CERCLA; (2) Defendant's failure to sufficiently allege the basis for their CERCLA and indemnification claims; (3) federal preemption of Defendant's indemnification claim; and (4) federal abstention doctrine. (Docket No. 229.)  We address each of these arguments in turn.

**1.     Jurisdiction Under CERCLA**

Plaintiffs maintain that we lack the competence to try Defendant's claim under CERCLA because Defendant involuntarily incurred expenses in the present case and because agency action is a necessary predicate to recoupment. (Docket No. 229.) CERCLA authorizes recovery by certain parties that undertake remedial action for contaminated sites. 42 U.S.C. §§ 9607(a), 9613(f)(1).

Section 9613(f) allows a party to claim contribution from another responsible party for costs incurred under a civil action pursuant to CERCLA. § 9613(f)(1). Alternatively, section 9607(a) permits a party to claim reimbursement from another responsible party for "necessary costs of response incurred . . . consistent with the national contingency plan ['NCP']". § 9607(a)(4)(B); see 40 C.F.R. § 300.700 (2009) (defining compliance with NCP).

First, there is no controlling case law that requires us to limit recovery of expenses under CERCLA to parties that voluntarily undertake remedial measures. United States v. Atl. Research Corp., 551 U.S. 128, 139 n.6 (2007) (declining to decide whether claimant under 42 U.S.C. §§ 107(a) and 113(f) must voluntarily incur costs). Furthermore, the Third Circuit case cited by Plaintiffs (Docket No. 241), E.I. Dupont de Nemours & Co. v. United States, explicitly rejects Plaintiffs' position. See 508 F.3d 126, 135 (3d Cir. 2007) (noting that "[u]nder § 107(a)(4)(B), a party is liable for costs incurred in a cleanup (voluntary or otherwise)" that is consistent with NCP).

Second, no prior agency action is required for recovery under 42 U.S.C. § 107(a), an avenue for recovery by CERCLA-compliant parties that is distinct from the provision for contribution under 42 U.S.C. § 113(f)(1), which requires a prior civil enforcement action. §§ 107(a), 113(f)(1); accord Atl. Research, 551 U.S. at 138-40, 141. We, therefore, reject Plaintiffs' jurisdictional challenge to Defendant's counterclaim under CERCLA.

**2.     Failure to State a Claim**

Plaintiffs also challenge Defendant's counterclaims on the basis of inadequate pleading. (Docket No. 229.) First, we note that Defendant alleges the existence of one or several agreements with Plaintiffs to hold Defendant harmless against all claims for injury or loss (Docket No. 222).

Defendant specifically avers that these contracts encompass claims for environmental harm. (Id.) Accordingly, Defendant has amply pleaded a claim for indemnification.

Second, Defendant asserts that it "has incurred necessary costs of response consistent with the [NCP] to address the release or disposal of hazardous substances . . . unrelated to fuel UST operations at" the station. (Id.) We may infer from this averment that Defendant has undertaken some form of remedial action with attendant expenses. At the same time, the statement is conclusory with respect to the manner in which such measure conforms with the NCP, because we have no details from which to infer Defendant's compliance with CERCLA. Therefore, dismissal is proper with respect to Defendant's CERCLA counterclaim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (noting that federal court need not accept averments constituting legal conclusions as true in treating motion to dismiss).

### 3. Federal Preemption Under RCRA

Plaintiff further argues that the RCRA preempts Defendant's claim for indemnification. (Docket No. 229.) We find no support in the First Circuit for the proposition that the RCRA precludes indemnification claims under state law by losing defendants against other parties. Although the RCRA does not permit a civil litigant to recover damages under § 6972(a), the federal act also "does not prevent a private party from recovering its cleanup costs under other federal or state laws." Meghrig v. KFC Western, Inc., 516 U.S. 479, 487-88 (1996). If the RCRA does not preempt a plaintiff from pursuing other remedies to recoup its expenses, we see no reason to assume that preemption applies to a defendant in an analogous situation.

Civil No. 08-2151 (JAF) -8-

### 4. Abstention Doctrine

Lastly, Plaintiffs contend that we should abstain from adjudicating Defendant's counterclaim for indemnification because of prudential policy favoring resolution of weighty state-law issues by state courts in the first instance. (Docket No. 229.) According to Plaintiffs, Puerto Rico has not definitively ruled on the validity of contracts authorizing recovery by defendants against plaintiffs in environmental cases, and we should, therefore, dismiss Defendant's claim. For support, Plaintiffs cite Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941); Quackenbush v. Allstate Insurance Co., 517 U.S. 706 (1996); New Orleans Public Service, Inc. v. Council of New Orleans ("NOPSI"), 491 U.S. 350 (1989); Shoshone Mining Co. v. Rutter, 177 U.S. 505 (1900); Posadas de Puerto Rico Associates v. Tourism Co., 478 U.S. 328 (1986); and Fornaris v. Ridge Tool Co., 400 U.S. 41 (1970).

In Pullman, the plaintiffs asserted a pendent claim, in addition to a claim under the Federal Constitution, that turned on the validity of a challenged statute under Texas state law. 312 U.S. at 498. The plaintiffs sought to enjoin the enforcement of a state railroad regulation that was allegedly discriminatory. Id. at 497-98. Upon equitable considerations, the Pullman Court decided that prudence counseled against its exercise of jurisdiction over matters better left to state-court adjudication before federal judicial intervention. Id. at 501. Unlike Pullman, the instant case presents an indemnification claim under Puerto Rico law that is not subject to rules in equity. We, therefore, find Pullman abstention doctrine to be inapposite.

Similarly, in Quackenbush, the Court noted that it had "applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that postpones adjudication of

Civil No. 08-2151 (JAF)                                                                                              -9-

the dispute, not to dismiss the federal suit altogether." 517 U.S. at 719-20 (citing Fornaris, 400 U.S. at 44); see Chico Serv. Station v. Sol P.R. Ltd., No. 09-1342, 2009 U.S. Dist. LEXIS 112915, at *15-16 (D.P.R. Dec. 4, 2009) (holding that abstention under RCRA permitted only if complainant seeks equitable relief). Therefore, Quackenbush cannot justify dismissal of the instant claim by Defendant for indemnification.

Interpreting NOPSI, the First Circuit observed that the abstention principle in that case applies only "to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." Sevigny v. Employers Ins. of Wasau, 411 F.3d 24, 27 (1st Cir. 2005) (quoting Pub. Serv. Co. v. Patch, 167 F.3d 15, 24 (1st Cir. 1998)). In Medical Malpractice Joint Underwriting Ass'n v. Pfeiffer, the First Circuit expounded on the importance of abstention in favor of federalism and comity "when there are pending or ongoing state judicial proceedings involving important state interests." 832 F.2d 240, 243 (1st Cir. 1987) (emphasis in original). In the instant case, there are no parallel administrative or judicial proceedings in Puerto Rico forums that command our attention. Cf. Chico Serv. Station, 2009 U.S. Dist. LEXIS 112915, at *14-15 (abstaining to avoid interference with parallel EQB action). Indeed, Plaintiffs insist that we take this case rather than allow the EQB to resolve the dispute. (See Docket No. 1.)

In Shoshone Mining, the Court determined that a federal statute attempted unconstitutionally to confer jurisdiction upon federal courts to adjudicate land disputes that were quintessentially matters reserved for state law. 177 U.S. at 507-08. Noting that the statute expressly incorporated local customs and laws as the rule of decision, the Court reasoned that Article III of the U.S.

Constitution did not contemplate such legislation under the ambit of federal-question jurisdiction. Id. at 506-08. We are not faced with a similar legislative usurpation in this case. The statute authorizing supplemental jurisdiction, see 28 U.S.C. § 1367(a), confers upon us the competence to adjudicate Defendant's claim under Puerto Rico law, and Plaintiffs do not challenge the constitutionality of this provision (Docket No. 229).

Likewise, we find Posadas de Puerto Rico to be inapposite because the deference accorded in that case referred to existing interpretations of Puerto Rico statutes by the Supreme Court of Puerto Rico. 478 U.S. at 339. Here, Plaintiffs argue that there is no authoritative interpretation by the Puerto Rico Supreme Court on point. (Docket No. 229.) Moreover, the Posadas Court applied Puerto Rico decisions to construe the necessity of judicial intervention to uphold rights under the First Amendment. 478 U.S. at 339. We are not concerned with a weighty constitutional matter in this case that cuts to the core of American civil liberties.

Lastly, Fornaris is also inapplicable because that case involved a situation where the federal court had invalidated as unconstitutional a Puerto Rico statute. 400 U.S. at 42-43. Given the delicacy of federal relations with Puerto Rico, the Fornaris Court held that the federal district court should stay the action pending a decision by the Supreme Court of Puerto Rico interpreting the scope of the local statute. Id. at 43-44. Defendant's counterclaim in this case does not attempt to invalidate a provision of Puerto Rico law. On the contrary, it is Plaintiffs who are challenging the validity of a putative contract under local law (Docket No. 229).

Therefore, none of Plaintiffs' cited authorities requires us to abstain from adjudicating Defendant's counterclaim under Puerto Rico law. We also find no other basis for abstention.

Accordingly, we heed the admonition that, in general, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," Quackenbush, 517 U.S. at 716. We, thus, permit Defendant to prosecute its counterclaim for indemnification.

**B.     Defendant's Motion to Dismiss**

Defendant contends that we should dismiss Plaintiffs' case against them due to our lack of subject-matter jurisdiction under 42 U.S.C. § 6972(a)(1)(A) and (B). (Docket No. 236.)

**1.     Ongoing Violation**

Defendant points out that a citizen's suit under § 6972(a)(1)(A) requires an ongoing violation and that the station has passed from Defendant's ownership to a third party. (Docket No. 236.) According to Defendant, it follows that no continuing violation of the RCRA is possible. (Id.)

We agree with Defendant that a suit brought under § 6972(a)(1)(A) "must be based on an ongoing violation." Sánchez v. Esso Standard Oil Co. (P.R.), 572 F.3d 1, 7 (1st Cir. 2009). We note, however, that the RCRA authorizes the federal Environmental Protection Agency ("EPA") to delegate certain duties relating to USTs to approved state agencies. 42 U.S.C. § 6991c. Pursuant to this authority, the EPA has authorized the EQB to "administer and enforce a[] [UST] program in lieu of the federal program under [the RCRA]" and has conferred upon Puerto Rico the "primary responsibility for enforcing its [UST] program." 40 C.F.R. § 282.102(a)-(b). In accordance with this authority, the EQB has promulgated rules regulating USTs and the treatment of substances released from them. 40 C.F.R. pt. 282, app. A; P.R. Envtl. Quality Bd., Reg. No. 4362,

Underground Storage Tanks Control Regulation (Nov. 7, 1990) [hereinafter EQB No. 4362].[1] Furthermore, like § 6972(a)(1)(A), EQB regulations apply to owners and operators of USTs. See generally EQB No. 4362. In short, EQB regulations must govern the ongoing handling of USTs and related discharges in this case.

We recently determined in an order dated December 12, 2009, that Defendant had supplied petroleum fuel products to the station until October 2008. (Docket No. 264 at 3.) Even if the station has changed hands and Defendant no longer exercises ownership or control over it, Defendant may have continuing obligations arising from its prior ownership, or may have been in default of its duties under EQB regulations since sometime before the change in title. Defendant makes much of certain time-sensitive requirements under Rules 501, 503, and 602 (Docket No. 236), but owners and operators of USTs are subject to other rules that impose ongoing duties, see generally EQB No. 4362. Also, Defendant has not cited, nor do we find, any authority to suggest that Defendant's obligations under EQB regulations terminated upon the transfer of ownership of the station and its USTs to a third party.

In its brief (Docket No. 236-1), Defendant also points to a determination by Plaintiffs' expert that there was no active leak from Defendant's USTs at the time of their transfer to new owners in late 2008 (Docket No. 236-2 at 7). Even if we accept this conclusion, it does not preclude the possibility that hazardous substances were previously released from the USTs over the course of their operation. Such spills would be subject to EQB regulation, see EQB No. 4362 (Rules 601-

---

[1] Env. Qual. Board Regulation 4362, http://www.westlaw.com (search in database, "enflex-pr," using "4362" as search term).

608), which is within the jurisdiction of this court, see 42 U.S.C. § 6991c. Indeed, Plaintiffs aver that Defendant has discovered the presence of hazardous material in the soil and groundwater beneath the station. (Docket No. 1.) Accordingly, we have the competence to entertain Plaintiffs' claim under 42 U.S.C. § 6972(a)(1)(A) against Defendant for alleged ongoing violations of EQB regulations.

### 2.    Imminent and Substantial Endangerment

Defendant next contends that we lack the jurisdiction to entertain Plaintiffs' claim under § 6972(a)(1)(B) because of their failure to sufficiently allege imminent and substantial danger to the public. (Docket No. 236.) We agree with Defendant that an action under § 6972(a)(1)(B) requires the plaintiff to aver "that the contaminated site presently poses an 'imminent and substantial endangerment to health or the environment.'" Meghrig, 516 U.S. at 488 (quoting § 6972(a)(1)(B)). In their complaint, Plaintiffs state that Defendant has discovered the presence of severe benzene contamination in the groundwater beneath the station, and that benzene is a carcinogenic substance. (Docket No. 1 ¶¶ 27-29.) Thus, Plaintiffs' averments suggest a significant threat to the health of the public through contact with benzene. Accordingly, Plaintiffs' well-pleaded complaint presents facts that are squarely within the ambit of § 6972(a)(1)(B).

### IV.
### Conclusion

In view of the foregoing, we hereby **GRANT IN PART** and **DENY IN PART** Plaintiffs' motion to dismiss (Docket No. 229), and **DENY** Defendant's motion to dismiss (Docket No. 236).

Civil No. 08-2151 (JAF)                                                                                            -14-

1   We **DISMISS** Defendant's counterclaim against Plaintiffs under CERCLA (Docket No. 222), but

2   **RETAIN** all other claims asserted by Plaintiffs and Defendant (Docket Nos. 1, 222).

3   **IT IS SO ORDERED.**

4   San Juan, Puerto Rico, this 22nd day of February, 2010.

5                                                     s/José Antonio Fusté
6                                                     JOSE ANTONIO FUSTE
7                                                     Chief U.S. District Judge