UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| JORGE FRANCISCO SÁNCHEZ and DOLORES SERVICE STATION AND AUTO PARTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ESSO STANDARD OIL DE PUERTO RICO, INC.,<br><br>Defendant. | Civil No. 08-2151 (JAF) |

**OPINION AND ORDER**

Plaintiffs, Jorge Francisco Sánchez and Dolores Service Station and Auto Parts, Inc., bring this action against Defendant, Esso Standard Oil de Puerto Rico, Inc. (Docket No. 1.) Plaintiffs allege violations of 42 U.S.C. §§ 6901–6992k. (Id.) Defendant counterclaims against Plaintiffs and impleads Third-Party Defendants, Jorge Luis Sánchez-Sánchez, Alicia Solano-Díaz, Héctor Benito Sánchez-Gómez, and Ángel M. Sánchez-Gómez, seeking reimbursement under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), and indemnification under Puerto Rico law. (Docket No. 301.) Plaintiffs and Third-Party Defendants (together, "Movants") move, respectively, to dismiss Defendant's CERCLA claims against them. (Docket No. 367.) Defendant opposes the motion. (Docket No. 384.)

## I.

## **Factual and Procedural Synopsis**

We draw the facts below from the relevant pleadings in this case (Docket Nos. 1; 301; 305; 350). Since 1984, Plaintiffs, Defendant, and Third-Party Defendants have all owned and operated Dolores Service Station (the "service station") in Canóvanas, Puerto Rico. Plaintiffs and Third-Party Defendants have commercial stores and own real property located at the service station, and they exercise control over the premises. Defendant installed and operated underground storage tanks ("USTs"), pipelines, and servicing equipment at the service station. Defendant has also supplied petroleum fuel products to that location.

Over the course of the service station's operation, at undetermined periods of time, the USTs and other components released hazardous substances into the ground under the service station. In 2003 and 2006, Defendant's consultant conducted subsoil evaluations that discovered the presence of contaminants beneath the service station at levels exceeding standards set by the Puerto Rico Environmental Quality Board ("EQB"). Defendant has since incurred expenses to assess and address the release or disposal of hazardous wastes that are unrelated to UST fuel operations at the service station. Defendant has kept records of these costs. Defendant has also consulted key stakeholders and EQB in formulating and implementing its response action.

On October 17, 2008, Plaintiffs commenced the instant case in federal court, alleging violations of the EQB's UST standards, and illegal operation of the service station as a waste

Civil No. 08-2151 (JAF)                                                                                          -3-

disposal facility. (Docket No. 1.) Defendant filed an amended answer with counterclaims against Plaintiffs and claims against other parties, seeking indemnification under contract and reimbursement under CERCLA for the cost of response actions that are unrelated to the USTs. (Docket No. 222.) Plaintiffs, Sánchez-Sánchez, and Solano-Díaz moved to dismiss these claims (Docket No. 229), which we granted in part by dismissing Defendant's CERCLA claims for failure to state a claim (Docket No. 279).

On March 15, 2010, Defendant amended its answer again to reassert the CERCLA claims. (Docket No. 301.) On June 30, Movants moved to dismiss these claims (Docket No. 367), and Defendant opposed (Docket No. 384).[1]

## II.

## **Standard for Judgment on the Pleadings**

Rule 12(c) allows any party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay the trial." Fed. R. Civ. P. 12(c). "The standard for evaluating a Rule 12(c) motion . . . is essentially the same as that for deciding a Rule 12(b)(6) motion." Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 22 (1st Cir. 2007) (quoting Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005)).

---

[1] Because Movants filed this motion to dismiss for failure to state a claim following their answers to Defendant's pleading (Docket Nos. 305; 350), we treat this motion as one seeking judgment on the pleadings. See Fed. R. Civ. P. 12(h)(2).

Borrowing from the standard for dismissal under Rule 12(b)(6), "a [movant's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008) (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plaintiff's complaint and the defendant's answer "must contain factual allegations sufficient to 'raise a right to relief above the speculative level.'" Id. (quoting Twombly, 550 U.S. at 555).

## III.

## Analysis

Movants contend that we should dismiss Defendant's CERCLA claims against them because of (1) a statutory exemption for owners who hold only security interests in affected properties and (2) Defendant's failure to sufficiently allege the basis for the claims. (Docket No. 367.) We address these arguments in turn.

### A. Security Interest Exception

Movants argue that Defendant fails to establish the Movants' status as owners or operators of the service station in support of its CERCLA claim. (Id.) Under CERCLA, private parties who undertake responsive actions for sites contaminated by hazardous substances may seek reimbursement from "the owner and operator of a . . . facility." 42 U.S.C. § 9607(a)(1). In defining potentially culpable owners and operators of polluted sites, CERCLA excludes persons "who, without participating in the management of a . . . facility, hold[] indicia

Civil No. 08-2151 (JAF) -5-

of ownership primarily to protect [their] security interest in the . . . facility." 42 U.S.C. § 9601(20)(A). A facility includes "any building, structure, installation, equipment, pipe . . . , or . . . any site or area where a hazardous substance has been deposited, stored, disposed of, or placed." § 9601(9). The purpose of this security interest exception "is to shield from liability those 'owners' who are in essence lenders holding title to the property as security for the debt." Waterville Indus., Inc., v. Fin. Auth., 984 F.2d 549, 552 (1st Cir. 1993); accord § 9601(E).

There is no indication that Movants hold a security interest in the service station or the USTs as a creditor pursuant to some security agreement. We, thus, find that the security interest exception does not preclude Defendant's counterclaim against Movants as operators of the service station. See Waterville Indus., 984 F.2d at 552.

**B.     Substantial Compliance**

Movants argue that, like Defendant's previous demand for reimbursement, the latest amended answer fails to show that Defendant has undertaken a response action that complies with the National Contingency Plan ("NCP"). (Docket No. 367; see Docket No. 279.)  In response, Defendant contends that its pleadings demonstrate substantial compliance with the NCP. (Docket No. 384.)

Under CERCLA, private parties may only seek reimbursement from other responsible persons for "necessary costs of response incurred . . . consistent with the [NCP]." 42 U.S.C. § 9607(a)(4)(B). "A private party response action will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with the applicable

requirements [enumerated], and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i) (2009).

Such applicable requirements may include provisions for workers' safety, documentation of expenditures, feasibility studies prior to the selection of a remedial plan, removal of hazardous material, compliance with applicable regulations, and site evaluations. § 300.700(c)(5). In addition, private parties "should provide an opportunity for public comment concerning the selection of the response action." § 300.700(c)(6). Furthermore,

> A "CERCLA-quality cleanup" is a response action that (1) protects human health and the environment, (2) utilizes permanent solutions and alternative treatment technologies or resource recovery technologies to the maximum extent practicable, (3) is cost-effective, (4) satisfies Applicable and Relevant or Appropriate Requirements for the site, and (5) provides opportunity for meaningful public participation.

Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc., 240 F.3d 534, 543 (6th Cir. 2001) (citing National Oil and Hazardous Substances Pollution Contingency Plan, 55 Fed. Reg. 8666, 8793 (Mar. 9, 1990)). "[I]mmaterial or insubstantial deviations from the [enumerated] provisions" do not render the response action noncompliant with the NCP. § 300.700(c)(4).

We previously dismissed Defendant's CERCLA claims under 42 U.S.C. § 9607(a)(4)(B), finding that Defendant's pleadings were "conclusory with respect to the manner in which such measure conforms with the NCP, because we have no details from which to infer Defendant's

compliance with CERCLA." (Docket No. 279 at 7.) Defendant's latest amended answer adds the following language:

> [Defendant] has conducted response actions at the [service station] under the direct supervision of the [EQB]. [Defendant] has monitored its costs to ensure that they were incurred to accomplish necessary and appropriate response actions. [Defendant] accounted for these costs . . . . Moreover, [Defendant] involved key stakeholders in the development and implementation of its technically sound work plans culminating in an approvable Corrective Action Plan filed with the [EQB] and implemented in accordance with applicable procedures.

(Docket No. 301 at 13, 15.)

While brief, unlike Defendant's previous allegations (Docket No. 222 at 13, 15), these revised averments allow us to deduce that Defendant is in substantial compliance with the relevant requirements under the NCP. See 40 C.F.R. § 300.700(c)(3)(i). We need not probe further; Defendant's ultimate success or failure on the merits is reserved for another day. We, therefore, reject Movants' challenge to Defendant's CERCLA claims.

## IV.

## Conclusion

Accordingly, we hereby **DENY** Movants' motion for dismissal (Docket No. 367).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 2nd day of August, 2010.

                   s/José Antonio Fusté
                   JOSE ANTONIO FUSTE
                   Chief U.S. District Judge